**FRESHFIELDS US LLP**
Madlyn Gleich Primoff, Esq.
madlyn.primoff@freshfields.com
Michael A. Sloman, Esq.
michael.sloman@freshfields.com
Faron E. Stalker, Esq.
faron.stalker@freshfields.com
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001

*Attorneys for Fleming Intermediate Holdings LLC (In Official Liquidation)*
*And Charles Thresh and Eleanor Fisher*
*In Their Capacities as Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FLEMING INTERMEDIATE HOLDINGS LLC (IN OFFICIAL LIQUIDATION),<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-12197 (PB) |

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING PURSUANT TO 11 U.S.C. §§ 1515 AND 1517 AND FOR RELATED RELIEF PURSUANT TO 11 U.S.C. §§ 105(a), 1507(a), 1520 AND 1521**

Charles Thresh of Teneo (Bermuda) Limited, on behalf of himself and Eleanor Fisher of Teneo (Cayman) Limited, in their capacities as the joint official liquidators (the "JOLs") and duly authorized foreign representatives (the "Foreign Representatives") of Fleming Intermediate Holdings LLC (In Official Liquidation) (the "Debtor"), by their undersigned counsel, for their verified petition (together with the official form petition filed concurrently herewith, the "Verified Petition") for (i) recognition of the Debtor's foreign main proceeding relating to the liquidation

proceeding currently pending before the Grand Court of the Cayman Islands (the "Cayman Court"), under the Cayman Limited Liability Companies Act (2025 Revision) (the "Cayman LLC Act"), the Cayman Companies Act (2025 Revision) (the "Cayman Companies Act"), and the Cayman Winding Up Rules 2023, Cause No: FSD 347 OF 2025 (MRHCJ) (the "Cayman Proceeding"), as a foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code (the "Bankruptcy Code"); and (ii) related relief pursuant to sections 105(a), 1504, 1507, 1515, 1516, 1517, 1520, and 1521 of the Bankruptcy Code, respectfully represents as follows.

In support of the Verified Petition, the Foreign Representatives have concurrently filed herewith the *Declaration of Ben Hobden in Support of Verified Petition for Recognition of Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1515 and 1517 and for Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1507(a), 1520 and 1521* (the "Hobden Declaration"), which is incorporated herein by reference.

**PRELIMINARY STATEMENT**

1. The Debtor is a limited liability company incorporated under the Cayman LLC Act, with registration number 5231 and its registered office located in the Cayman Islands. The Debtor is a holding company within a group of insurance and reinsurance entities (the "Group") and is the immediate parent company of Jaguar Holdings LLC (In Liquidation) ("Jaguar"). Jaguar, in turn, is the immediate parent of the Group's principal operating entities. The Debtor's center of main interests ("COMI") is in the Cayman Islands.

2. In November 2023, the Debtor entered into a stock purchase agreement (the "SPA") with James River Group Holdings, Ltd. ("James River") for the purchase of JRG Reinsurance Company Ltd. ("JRG Re"), which was subsequently renamed Fleming International Reinsurance

Ltd. ("FIRe"). As described more fully herein, the Debtor declined to close the transaction after James River took certain actions that were alleged to have breached the SPA. After James River obtained a court order compelling the Debtor to close the SPA, the Debtor consummated the purchase of JRG Re, following which JRG Re was renamed FIRe.

3. To finance the acquisition of FIRe, the Group entered into a New York law-governed Credit Agreement (the "Credit Agreement"), dated April 16, 2024, between Jaguar as borrower, the Debtor as parent guarantor and Royal Bank of Canada ("RBC") as lender and administrative agent. The Credit Agreement permitted Jaguar to borrow senior unsecured term and revolving facilities of up to $125,000,000. The Debtor fully guaranteed Jaguar's obligations under the Credit Agreement.

4. The Credit Agreement contains a consolidated debt to capitalization covenant, which Jaguar became unable to satisfy. On October 15, 2025, RBC declared multiple events of default under the Credit Agreement and accelerated the loans under the Credit Agreement. As of October 15, 2025, the Debtor, as guarantor under the Credit Agreement, was indebted to RBC in the amount of approximately $124.6 million. Following the acceleration of the loans under the Credit Agreement, as described more fully herein, RBC petitioned the Supreme Court of Bermuda to oversee the liquidation of Jaguar, which petition was granted.

5. Subsequently, on November 3, 2025, the Debtor's sole member passed a resolution appointing Charles Thresh and Eleanor Fisher as the joint voluntary liquidators of the Debtor. The joint voluntary liquidators filed an application for the Debtor's liquidation to be overseen by the Cayman Court. The Cayman Court entered an order (the "Supervision Order") on January 13, 2026 granting the application and appointing Charles Thresh and Eleanor Fisher as the JOLs of the Debtor. Further, the Cayman Court entered an order (the "Sanction Order") on September 11,

2026 authorizing, among other things, the JOLs to act as the Debtor's foreign representatives within the meaning of Section 101(24) of the Bankruptcy Code and to commence this Chapter 15 case. The JOLs are thus duly appointed officers authorized to administer the winding up of the Debtor's assets and affairs under the supervision of the Cayman Court and are the Debtor's foreign representatives under section 101(24) of the Bankruptcy Code for purposes of this Chapter 15 case.

6. The purpose of this Chapter 15 case is to obtain recognition of the Cayman Proceeding and related relief in the United States in order to protect and maximize the value of the Debtor's estate for the benefit of its creditors and stakeholders. In particular, Chapter 15 recognition will preserve key resources and assets of the Debtor and centralize the administration of claims against the Debtor in the Cayman Proceeding. As discussed more fully below, the Debtor is a defendant in an action brought by James River, which action is presently pending in the Supreme Court of the State of New York (the "NY State Court"). Chapter 15 recognition of the Cayman Proceeding will facilitate a prompt stay of the action pending against the Debtor in the NY State Court before the Debtor is required to engage in a burdensome discovery process. Chapter 15 will allow the JOLs sufficient time and breathing space to conduct an orderly administration of the Debtor's estate and preserve the Debtor's assets for the benefit of the Debtor's creditors.

7. In addition, Chapter 15 recognition of the Cayman Proceeding will enable the JOLs to investigate, evaluate, preserve and, if appropriate, pursue potential litigation claims for the benefit of the Debtor's estate and its creditors. Chapter 15 will grant the Foreign Representatives access to broad discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"). The Foreign Representatives intend to pursue Rule 2004 discovery in connection with their investigation into the business and affairs of the Debtor as well as their evaluation and

assessment of potential claims and causes of action (which claims and causes of action may represent material assets of the estate). The Foreign Representatives' ability to adequately review, investigate and, if appropriate, pursue potential litigation claims may serve to maximize the distribution of recoveries to the Debtor's creditors. For these reasons, the Foreign Representatives submit that Chapter 15 recognition of the Cayman Proceeding will facilitate the administration of the Debtor's estate and maximize value for all of the Debtor's stakeholders.

8. As discussed below, the Debtor's assets in this district include a retainer held by the Foreign Representatives' counsel in New York, New York. The Debtor is party to the New York law-governed Credit Agreement. In addition, as described more fully below, the Debtor has asserted claims against James River in the United States District Court for the Southern District of New York (the "NY Federal Court"). Those claims were dismissed by the NY Federal Court, and the Debtor has appealed such dismissal to the United States Court of Appeals for the Second Circuit (the "Second Circuit"), where it remains pending.

9. The Debtor's COMI is in the Cayman Islands because, among other reasons, the Debtor has been incorporated in the Cayman Islands since 2022, has its registered office in George Town, Cayman Islands, is supervised by the Cayman Court in the Cayman Proceeding, and has its nerve center in the Cayman Islands.

10. By this Verified Petition, the Foreign Representatives seek entry of an order, substantially in the form attached hereto, (i) recognizing the Cayman Proceeding as a foreign main proceeding under sections 1515 and 1517 of the Bankruptcy Code; (ii) recognizing the JOLs as the Debtor's foreign representatives within the meaning of section 101(24); and (iii) granting related relief under sections 1520 and 1521, including the protections of the automatic stay in the United States. As set forth herein, the requested relief is appropriate because, among other reasons,

(a) the Cayman Proceeding is a foreign main proceeding, as this Court has repeatedly held with respect to Cayman winding-up and liquidation proceedings; (b) the Debtor's COMI is in the Cayman Islands; and (c) the JOLs are proper foreign representatives appointed by the Cayman Court. Recognition of the Cayman Proceeding is consistent with, and not manifestly contrary to, the public policy of the United States.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

12. Venue is proper in this district pursuant to 28 U.S.C. § 1410(1) because the Debtor's principal asset in the United States is located in this district. Specifically, the Debtor has an interest in an undrawn retainer with Freshfields US LLP ("Freshfields"), the United States counsel for the Debtor and the Foreign Representatives in connection with this Chapter 15 case, in New York, New York. Moreover, venue is proper in this district pursuant to 28 U.S.C. § 1410(2) because the pending litigations by James River and against James River are in this district.

13. The statutory predicates for the relief requested herein are sections 105(a), 1504, 1507, 1515, 1517, 1520, 1521, and 1522 of the Bankruptcy Code.

## BACKGROUND

### I. The Debtor's Business

14. The Debtor is a limited liability company, incorporated in the Cayman Islands on February 15, 2022, with registration number 5231. The Debtor's registered office is at Teneo (Cayman) Limited, at Ground Floor, Harbour Place, 103 South Church Street, P.O. Box 10245, George Town, Grand Cayman, KY1-1003, Cayman Islands. Prior to its voluntary liquidation, the

Debtor's registered office was located at Maples Corporate Services Limited, P.O. Box 309, Ugland House, South Church Street, George Town, Grand Cayman, KY1-1104, Cayman Islands.

15. The Debtor sits within a group of insurance and reinsurance entities that is ultimately owned by ACP Fleming Holdings, L.P. ACP Fleming Holdings, L.P. wholly owns ACP Risk Solutions LLC, which in turn wholly owns Fleming Reinsurance Holdings LLC ("FRH"). FRH is the sole member and sole manager of the Debtor. The Debtor acts as an intermediate holding company for the Group's various operating subsidiaries.

16. The Debtor is the direct parent of Jaguar. Jaguar is the immediate holding company of (i) FIRe, a Class 3B reinsurer, and (ii) Fleming International Services Co Bermuda LLC, which acts as the service company to FIRe and other Group entities.

17. The Group conducts its primary business as a specialty run-off acquirer and legacy reinsurance liability carrier focused on the North American property and casualty industry and assuming reinsurance business ceded to it by various ceding insurers. FIRe is exclusively permitted under its license and applicable regulatory guidance to write retroactive reinsurance.

## II. The Debtor's U.S. Assets

18. The Debtor has property and interests in property in the United States, and in this district in particular. The Debtor is a party to the Credit Agreement, which is governed by the law of the State of New York. Under section 10.09 of the Credit Agreement, the Debtor irrevocably and unconditionally submitted to the exclusive jurisdiction of the courts of the State of New York sitting in New York County and the United States District Court for the Southern District of New York in respect of any action relating to the Credit Agreement.

19. Pursuant to the terms of the JOLs' engagement with Freshfields, the Debtor agreed to transfer $10,000 of the Debtor's funds to New York to serve as a retainer for Freshfields' fees

throughout the engagement. Pursuant to the terms of the engagement, the funds can be applied to Freshfields' invoice only at the direction of the Debtor. The Debtor has not given any such direction and will not give any such direction until after the above-captioned Chapter 15 case is closed. On September 8, 2026, the Debtor's funds in the amount of $10,000 were deposited in a client trust account with Citibank ("Citi") in the United States (the "Client Trust Account"). The Debtor is the beneficial owner of the Client Trust Account for United States tax withholding purposes. Citi has confirmed that the Debtor has $10,000 in an account with Citi in the United States.

## III. Summary of the Group's Capital Structure

20. The Group's funded indebtedness consists principally of loans advanced under the New York law-governed Credit Agreement, dated as of April 16, 2024, between Jaguar, as borrower, the Debtor, as guarantor, and RBC as lender, issuing lender and administrative agent. The loans under the Credit Agreement are comprised of (i) a $75,000,000 senior unsecured term loan facility (the "Term Loan Facility") and (ii) a $50,000,000 senior unsecured revolving credit facility (the "RCF" and, together with the Term Loan Facility, the "Loan Facilities"). As described more fully below, the Group entered into the Credit Agreement to finance the acquisition of FIRe.

21. The Loan Facilities are unsecured and guaranteed by the Debtor. As described more fully below, on October 15, 2025, RBC issued a notice of acceleration in respect of the Credit Agreement following an event of default under the Credit Agreement, resulting in the entirety of all amounts outstanding under the Credit Agreement becoming immediately due and payable. As of October 15, 2025, the Debtor is indebted to RBC under the Credit Agreement in the amount of approximately $124.6 million.

## IV. Events Giving Rise to the Cayman Proceeding

22. On November 8, 2023, the Debtor entered into the SPA with James River, pursuant to which the Debtor agreed to acquire the shares of JRG Re. Prior to the closing of the SPA, on or around February 26, 2024, JRG Re made certain distributions (the "Distributions") to James River in the aggregate amount of approximately $139 million. The Debtor raised concerns about the Distributions to James River and, because of such concerns, ultimately determined that it should not consummate the SPA and acquisition of JRG Re.

23. On March 11, 2024, James River filed an action (the "JRG State Court Proceeding") in the NY State Court, Index No. 651281/2024, seeking an order (among other things) compelling the Debtor to close the SPA and consummate the transactions contemplated thereby. On April 6, 2024, the NY State Court granted James River a preliminary injunction, directing the Debtor to close the SPA and complete the purchase of the JRG Re shares within ten (10) days. The Debtor and James River subsequently closed the transaction and the Debtor acquired JRG Re.

24. James River has also brought claims against the Debtor in the JRG State Court Proceeding, which remains pending, for alleged damages arising out of the Debtor's alleged breach of the SPA. On July 28, 2026, the NY State Court entered a scheduling order requiring the Debtor to make initial discovery disclosures and file an answer to James River's amended complaint by no later than September 8, 2026. On September 4, 2026, the NY State Court amended the scheduling order by extending the deadline for initial discovery disclosures to September 30, 2026 and providing for initial discovery requests to be served no later than October 9, 2026. The NY State Court also ordered the Debtor to provide a status update on October 2, 2026.

25. Following the closing of the SPA, on July 15, 2024, the Debtor filed an action (the "JRG Federal Court Proceeding") in the NY Federal Court, Case No. 24-cv-05335, against James

River and two of James River's officers, alleging breach of contract, securities fraud and common law fraud. The NY Federal Court entered an order on July 17, 2025 dismissing the JRG Federal Court Proceeding. The Debtor appealed the dismissal of the JRG Federal Court Proceeding to the Second Circuit, Case No. 25-3198.

26. In order to finance the acquisition of FIRe, the Debtor and Jaguar entered into the Credit Agreement with RBC. One of the covenants under the Credit Agreement required Jaguar to maintain a maximum consolidated debt to capitalization ratio (the "CDCR Covenant"). On May 30, 2025, Jaguar delivered to RBC a certificate acknowledging the occurrence and continuation of certain events of default arising from Jaguar's failure to satisfy the CDCR Covenant as of March 31, 2025. On August 27, 2025, Jaguar delivered to RBC another certificate acknowledging a further event of default arising from Jaguar's failure to satisfy the CDCR Covenant as of June 30, 2025.

27. Jaguar subsequently failed to make a payment of accrued interest due and payable under the Credit Agreement on October 14, 2025, and failed to provide notice of such default as required by the Credit Agreement. As a result of these events of default, on October 15, 2025, RBC issued an acceleration notice to the Debtor terminating the commitments under the Credit Agreement and declaring the loans immediately due and payable, together with accrued interest, fees and other obligations. The total accelerated debt under the Credit Agreement is in the amount of approximately $124.6 million as of October 15, 2025.

28. On October 17, 2025, RBC filed a petition in the Supreme Court of Bermuda seeking the appointment of joint provisional liquidators to oversee the liquidation and winding up of Jaguar. On October 31, 2025, the Supreme Court of Bermuda entered an order granting RBC's

petition and, on March 27, 2026, the Supreme Court of Bermuda entered an order that Jaguar be wound up under Bermuda law.

## V. The Cayman Proceeding

29. Following Jaguar's default under the Credit Agreement, the Debtor presented a petition to the Cayman Court on October 20, 2025, seeking the appointment of restructuring officers pursuant to section 91B of the Cayman Companies Act. This petition was subsequently withdrawn on November 3, 2025, contemporaneously with the appointment of Charles Thresh and Eleanor Fisher as joint voluntary liquidators of the Debtor by FRH, the Debtor's sole member. The resolution also recorded that the Debtor was unable to pay its debts and that FRH could not provide any declaration of solvency with respect to the Debtor.

30. On November 27, 2025, Charles Thresh and Eleanor Fisher, as joint voluntary liquidators of the Debtor, filed an application with the Cayman Court to bring the liquidation of the Debtor under the Cayman Court's supervision. On January 13, 2026, the Cayman Court entered the Supervision Order appointing Charles Thresh and Eleanor Fisher as JOLs and ordering that the Debtor's liquidation continue under the supervision of the Cayman Court. The Supervision Order also authorized the JOLs to enter into a funding agreement with RBC to fund the costs and expenses of the liquidation. On September 11, 2026, the Cayman Court entered the Sanction Order, authorizing, among other things, the JOLs to act as the Debtor's Foreign Representatives and to commence this Chapter 15 case.

31. On March 3, 2026, the JOLs convened a meeting of the Debtor's creditors with the primary purpose of establishing a liquidation committee. Cayman law requires the establishment of a liquidation committee for any entity that is in a liquidation proceeding supervised by the Cayman Court. The role of the liquidation committee is to act as the representative of the

liquidating company's creditors in connection with the liquidation. In the Debtor's case, however, a quorum of creditors did not attend the first meeting of the Debtor's creditors and the meeting was adjourned indefinitely. Accordingly, no liquidation committee has been established. On July 20, 2026, the Cayman Court entered an order dispensing with the requirement to establish a liquidation committee.

32. On February 16, 2026, the JOLs filed their First Report to Creditors (the "Report") with the Cayman Court. In the Report, the JOLs identify two main assets of the Debtor that may ultimately provide recovery for the Debtor's creditors: (i) the Debtor's investment in Jaguar and (ii) potential litigation and/or insurance proceeds. Because Jaguar is the subject of liquidation proceedings under Bermuda law, any potential realization of the Debtor's investment in Jaguar is dependent on distributions made during the course of Jaguar's liquidation proceedings.

33. Potential litigation and/or insurance proceeds constitute the vast majority of the Debtor's potential assets. Consistent with their fiduciary duties as a matter of Cayman Islands law, the JOLs are presently conducting an investigation of the facts and circumstances surrounding the Debtor's entry into the SPA with James River. Such investigation may reveal that the Debtor has claims and causes of action relating to the transactions that are the subject of the SPA. If the Debtor's estate does have such claims and causes of action, then the JOLs intend (again, consistent with their fiduciary duties under Cayman Islands law) to evaluate such claims and determine whether it would be appropriate to pursue such claims and causes of action. These claims and causes of action, if any, may represent material assets of the Debtor's estate.

34. In connection with their investigation into the facts and circumstances surrounding the transactions that were the subject of the SPA, the JOLs have determined that it is necessary for them to commence this Chapter 15 case. In particular, the JOLs believe that access to Rule 2004

discovery will assist the JOLs in investigating and evaluating the Debtor's potential claims and causes of action against various third parties and improve the Debtor's likelihood of obtaining litigation funding with which to pursue any potential claims—in the event that the JOLs determine that it is appropriate to pursue such claims.

35. Additionally, the Foreign Representatives seek a prompt stay of the JRG State Court Proceeding to preserve the value of the Debtor's estate before the Debtor is obligated to engage in a burdensome discovery process. A stay of the JRG State Court Proceeding will not only preserve the Debtor's assets but will also furnish the JOLs with additional time and breathing room to conduct an orderly administration of the Debtor's estate from its nerve center in the Cayman Islands. Further, the JOLs believe that Chapter 15 will assist the Debtor in equitably implementing creditor recoveries through cooperation with the Cayman Court. The JOLs believe that these benefits will provide material benefits to the Debtor's estate, including by facilitating the orderly administration of the Debtor's assets.

## VI. Center of Main Interests of the Debtor

36. The Debtor's COMI is in the Cayman Islands. The Debtor is a limited liability company incorporated in the Cayman Islands and maintains its registered office in George Town, Cayman Islands. Moreover, the Cayman Islands is the nerve center of the Debtor's liquidation proceeding, since the liquidation is supervised by the Cayman Court and the Debtor's affairs are presently administered from the Cayman Islands by the JOLs, officers appointed by and subject to the supervision of the Cayman Court. Accordingly, pursuant to Bankruptcy Code section 1516(c), the Debtor is entitled to the presumption that its COMI is in the Cayman Islands.

## RELIEF SOUGHT

37. By this Verified Petition, the Foreign Representatives seek the following relief:

(1) recognition pursuant to section 1517 of the Bankruptcy Code of the Cayman Proceeding as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code;

(2) recognition that the Foreign Representatives are the "foreign representatives" on a final basis (as defined in section 101(24) of the Bankruptcy Code);

(3) all relief automatically available pursuant to section 1520 of the Bankruptcy Code, including a stay of execution against the Debtor's assets in the United States and barring, enjoining, and staying, pursuant to section 362 of the Bankruptcy Code, any action to interfere with these assets; and

(4) such other and further relief as is appropriate under the circumstances pursuant to sections 105(a), 1507 and 1521 of the Bankruptcy Code.

38. To the extent the relief requested herein exceeds the relief available to the Foreign Representatives with respect to the Debtor pursuant to section 1520 of the Bankruptcy Code, the Foreign Representatives request this relief pursuant to section 1521 of the Bankruptcy Code.

39. In the event the Court were to determine the Cayman Proceeding is not a foreign main proceeding, the Foreign Representatives seek recognition of the Cayman Proceeding as a "foreign nonmain proceeding" as defined in section 1502(5) of the Bankruptcy Code and request that the Court grant the relief requested above pursuant to sections 1507 and 1521 of the Bankruptcy Code.

## BASIS FOR RELIEF

40. Chapter 15 of the Bankruptcy Code is designed to protect and maximize the value of a foreign debtor's assets, and to facilitate the liquidation or restructuring of its assets and liabilities. The relief afforded to a foreign debtor under Chapter 15 is intended to avoid disruptions

that could otherwise derail a debtor's insolvency proceeding in its home country, in this case, the Cayman Islands. One of the primary objectives of Chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3).

41. For the reasons set forth herein, the Cayman Proceeding is entitled to recognition under section 1517 of the Bankruptcy Code, and recognition is mandatory once the statutory requirements of section 1517(a) are met. *See In re Millard*, 501 B.R. 644, 653–54 (Bankr. S.D.N.Y. 2013). The Cayman Proceeding is (i) a foreign proceeding within the meaning of Bankruptcy Code section 101(23) and (ii) a foreign main proceeding within the meaning of Bankruptcy Code section 1502(4). As described above, the Debtor's registered office is located in the Cayman Islands, which is the Debtor's COMI within the meaning of Bankruptcy Code section 1516(c). The Foreign Representatives are foreign representatives within the meaning of Bankruptcy Code section 101(24), and the Verified Petition meets the requirements of Bankruptcy Code section 1515.

42. The requested relief is also consistent with the goals of Chapter 15. The Foreign Representatives submit that granting the relief sought herein will aid the Cayman Proceeding and will facilitate an orderly winddown of the Debtor's estate. Through the Cayman Proceeding, the Debtor is seeking to maximize value for the benefit of its stakeholders and to ensure the just treatment of all holders of claims against and interests in the Debtor. These goals are aligned with the objectives of Chapter 15. *See* 11 U.S.C. § 1501(a)(3).

43. Moreover, granting recognition will promote the U.S. public policy of respecting foreign proceedings as articulated in, *inter alia*, Bankruptcy Code sections 1501(a) and 1508 and does not violate Bankruptcy Code section 1506. Thus, the conditions for recognition of the Foreign

Representatives and the Cayman Proceeding under Bankruptcy Code section 1517 have been satisfied.

**I. The Debtor is Eligible for Chapter 15 Relief.**

44. Section 109(a) of the Bankruptcy Code requires that a debtor have a residence, domicile, a place of business, or property in the United States. *See* 11 U.S.C. § 109(a). The Second Circuit has held that section 109(a) applies to a debtor in a foreign main proceeding under Chapter 15. *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 250 (2d Cir. 2013). Here, the Debtor satisfies section 109(a) because it has property in the United States. Specifically, the Debtor has an interest in an undrawn retainer with Freshfields, the Debtor's and Foreign Representatives' United States counsel, located in New York and the Debtor's pending litigation claims against James River are property in this district. Additionally, the Debtor is a party to the Credit Agreement, which is USD-denominated and governed by the law of the State of New York and under which the Debtor submitted to the jurisdiction of the New York courts. For these reasons, the Debtor satisfies section 109(a) of the Bankruptcy Code.

**II. This Case has Been Properly Commenced Under Chapter 15.**

45. Section 1504 of the Bankruptcy Code provides that a case under Chapter 15 is "commenced by the filing of a petition for recognition of a foreign proceeding under section 1515." 11 U.S.C. § 1504. As set forth below, the Foreign Representatives have satisfied the requirements of section 1515.

**A. <u>This Case is Proper Under Chapter 15.</u>**

46. Chapter 15 applies where, as here, a foreign representative seeks assistance in the United States in connection with a foreign proceeding. 11 U.S.C. § 1501(b)(1). One of the objectives of Chapter 15 is the "fair and efficient administration of cross-border insolvencies that

protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3).

47. This Chapter 15 case has been commenced for the purpose of protecting and maximizing the value of the Debtor's estate for the benefit of the Debtor and its stakeholders so that the Debtor's assets and affairs can be administered in an orderly manner under the supervision of the Cayman Court. On this basis, the Foreign Representatives submit that this Chapter 15 case is proper and consistent with the goals and objectives of Chapter 15.

**B. <u>This Case Was Commenced in Accordance with Section 1515(a).</u>**

48. To obtain recognition of the Cayman Proceeding under section 1515(a), the Foreign Representatives must satisfy two principal requirements: (a) the Cayman Proceeding must qualify as a "foreign proceeding," and (b) the Foreign Representatives must qualify as a "foreign representative." Both requirements are satisfied here.

***i. This Case Concerns a Foreign Proceeding.***

49. Bankruptcy Code section 101(23) provides, in pertinent part:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

50. Courts have held that a foreign proceeding is one:

(1) in which "acts and formalities [are] set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice," *In re Betcorp Ltd.*, 400 B.R. 266, 278 (Bankr. D. Nev. 2009);

(2) that has either a judicial or administrative character, *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (citing *Betcorp*, 400 B.R. at 277);

(3) that is collective in nature, in the sense that the proceeding considers the rights and obligations of all creditors, *id.*;

(4) that is located in a foreign country, *id.*;

(5) that is authorized or conducted under a law related to insolvency or the adjustment of debt, even if the debtor that has commenced such proceedings is not actually insolvent, *id.*;

(6) in which the debtor's assets and affairs are subject to control or supervision of a foreign court or other authority competent to control or supervise a foreign proceeding, *id.*; and

(7) whose purpose is reorganization or liquidation, *id.*

The Cayman Proceeding satisfies these requirements and thus qualifies as a "foreign proceeding" within the meaning of Bankruptcy Code section 101(23).

51. ***First***, the Cayman Proceeding is a proceeding commenced under the Cayman Companies Act, a Cayman Islands law that governs corporate liquidations. *See* Hobden Decl. ¶¶ 21, 38.

52. ***Second***, the proceeding is "judicial," as it has been commenced and is pending before the Cayman Court. Importantly, the Cayman Court has been given jurisdiction over all winding up proceedings for companies in the Cayman Islands. *See* Hobden Decl. ¶¶ 22-23.

53. ***Third***, the Cayman Proceeding is collective in nature, in that all affected creditors are allowed to participate. A collective proceeding is one that "considers the rights and obligations of all creditors." *Betcorp*, 400 B.R. at 281. A non-collective proceeding, by contrast, resembles a

"receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *Id*. A key principle underlying the Cayman Companies Act and the Cayman Proceeding is that the claims of investors and creditors within the same class are treated on a *pari passu* basis. *See* Hobden Decl. ¶ 27. The Cayman Proceeding thus bears the hallmarks of a collective proceeding.

54. ***Fourth***, the Cayman Court before which the Cayman Proceeding is pending is in the Cayman Islands, which is a foreign country.

55. ***Fifth***, the Debtor's assets are subject to the supervision of the Cayman Court during the pendency of the Cayman Proceeding.

56. ***Finally***, the objective of the Cayman Proceeding is liquidation of all of the Debtor's assets. Thus, the JOLs commenced the Cayman Proceeding for the purpose of liquidation, as required by section 101(23) of the Bankruptcy Code.

57. Courts in this district have repeatedly recognized Cayman winding-up and provisional liquidation proceedings as "foreign proceedings" under Chapter 15. *See, e.g.*, *In re Ascentra Holdings, Inc. (In Official Liquidation)*, No. 21-11854 (DSJ) [Dkt. No. 22] (Bankr. S.D.N.Y. Dec. 6, 2021); *In re Global Trade Finance Fund, Ltd.*, No. 20-10132 (MEW) [Dkt. No. 9] (Bankr. S.D.N.Y. Feb. 19, 2020); *In re OneTRADEx, Ltd.*, No. 19-13257 (MG) [Dkt. No. 10] (Bankr. S.D.N.Y. Nov. 18, 2019); *In re CAMAC Int'l Ltd. – In Official Liquidation*, No. 17-12827 (SCC) [Dkt. No. 7] (Bankr. S.D.N.Y. Nov. 2, 2017); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014).

***ii. This Chapter 15 Case was Commenced by the Duly Authorized Foreign Representatives.***

58. Section 101(24) of the Bankruptcy Code defines a "foreign representative" as a "person or body… authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."

11 U.S.C. § 101(24). The JOLs were appointed by the Cayman Court to conduct the Debtor's liquidation under the supervision of the Cayman Court. Under Cayman Islands law, action by either of the two Foreign Representatives suffices to authorize conduct of the Debtor. Additionally, the Sanction Order entered by the Cayman Court expressly authorizes the JOLs to act as the Debtor's "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code. The JOLs therefore satisfy the requirements of section 101(24) and are the Debtor's "foreign representatives" within the meaning of that section.

59. Courts in this district have consistently held that a liquidator or provisional liquidator appointed in the Cayman Islands constitutes a "foreign representative" for Chapter 15 purposes. *See, e.g.*, *In re Ascentra Holdings, Inc. (In Official Liquidation)*, No. 21-11854 (DSJ) [Dkt. No. 22] (Bankr. S.D.N.Y. Dec. 6, 2021); *In re Global Trade Finance Fund, Ltd.*, No. 20-10132 (MEW) [Dkt. No. 9] (Bankr. S.D.N.Y. Feb. 19, 2020); *In re OneTRADEx, Ltd.*, No. 19-13257 (MG) [Dkt. No. 10] (Bankr. S.D.N.Y. Nov. 18, 2019); *In re CAMAC Int'l Ltd. – In Official Liquidation*, No. 17-12827 (SCC) [Dkt. No. 7] (Bankr. S.D.N.Y. Nov. 2, 2017); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014).

### C. <u>This Case Was Properly Commenced Under Section 1515(b).</u>

60. To establish a basis for recognition under Chapter 15 of the Bankruptcy Code, the petition for recognition must be supported by the documentation enumerated in section 1515(b) of the Bankruptcy Code. Specifically, the Chapter 15 petition must be accompanied by:

> (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;
>
> (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or
>
> (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the

> existence of such foreign proceeding and of the appointment of the foreign representative.

11 U.S.C. § 1515(b).

61. The Foreign Representatives commenced this Chapter 15 case by filing the Official Form 401 Petition for the Debtor, which includes, as an exhibit, a certified copy of the Supervision Order. Accordingly, the Foreign Representatives submit that this case has been properly commenced under 11 U.S.C. § 1515(b) and (c).

## III. The Cayman Proceeding Should be Recognized as a Foreign Main Proceeding.

62. The Bankruptcy Code provides that a foreign proceeding for which Chapter 15 recognition is sought must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has its "center of main interests." 11 U.S.C. §§ 1517(b), 1502(4). Although "center of main interests" is not defined in the Bankruptcy Code, courts in the U.S. have generally found a debtor's COMI to be where the debtor conducts the administration of its interests on a regular basis and is, therefore, ascertainable by third parties. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 130 (2d Cir. 2013) ("[t]he relevant principle … is that the COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties"). A debtor's COMI "should be determined based on its activities at or around the time the Chapter 15 petition is filed." *Id*. at 137. In the absence of evidence to the contrary, the debtor's registered office is presumed to be the center of the debtor's main interests. 11 U.S.C. § 1516(c).

63. In assessing COMI, courts consider, among other factors, the location of the debtor's headquarters, the location of those who actually manage the debtor and the location of the debtor's primary assets, and they give particular weight to the location where liquidators or provisional liquidators administer the debtor's affairs as of the petition date. *See In re SphinX, Ltd.*,

351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 706 (Bankr. S.D.N.Y. 2017); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 417–18 (Bankr. S.D.N.Y. 2014); *In re Fairfield Sentry*, 714 F.3d at 137. As set forth above, the Debtor's registered office is located in George Town, Cayman Islands, and the Cayman Islands is the nerve center of the Debtor's liquidation. As of the date of this Chapter 15 filing, which is when a debtor's COMI is ascertained, *see In re Fairfield Sentry*, 714 F.3d at 137, the business of the Debtor is the liquidation of its assets. Since their appointment, the JOLs have centralized the administration of the Debtor's assets and affairs in the Cayman Islands under the supervision of the Cayman Court. Moreover, one of the JOLs, Eleanor Fisher, is a permanent resident of the Cayman Islands. Accordingly, the Debtor's COMI is in the Cayman Islands, the Cayman Proceeding constitutes a "foreign main proceeding" within the meaning of section 1502(4) and the Debtor is entitled to an order (substantially in the form annexed hereto) recognizing the Cayman Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

## IV. Once Recognized, the Debtor is Entitled to Certain Relief under Section 1520.

64. Upon recognition of the Cayman Proceeding as a foreign main proceeding, the Debtor is automatically entitled to the relief under section 1520(a) of the Bankruptcy Code, including application of the automatic stay under section 362 to the Debtor and its property within the territorial jurisdiction of the United States. The Foreign Representatives request that, through the extension of the relief automatically available under section 1520(a), the Court expressly bar, enjoin and stay the JRG State Court Proceeding and any other action that interferes with the Debtor's assets and interests in the United States. As these benefits flow automatically from recognition of the Cayman Proceeding, the Foreign Representatives respectfully submit that no further showing is required.

## V. Certain Additional Relief is Both Necessary and Appropriate.

65. To the extent any requested relief is outside the scope of section 1520, the Foreign Representatives request such relief pursuant to sections 1521 and 1507 of the Bankruptcy Code. Section 1521 authorizes the Court to grant "any appropriate relief," including "any additional relief that may be available to a trustee," provided that the interests of creditors in the United States are sufficiently protected. Section 1522(a) permits the Court to grant relief pursuant to section 1521 only if the interests of creditors, the debtor, and other interested entities are "sufficiently protected." "Sufficient protection" embodies "three basic principles: 'the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law.'" *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009).

66. Here, the Debtor's creditors have had a full and fair opportunity to be heard in the Cayman Proceeding in a manner consistent with U.S. due process standards, including through the meetings of creditors. RBC, which, based on the JOLs' current records and estimates, holds approximately 57% by value of the claims presently identified against the Debtor and is by far the Debtor's largest identified creditor, supports the commencement of this Chapter 15 case. Under principles of comity, this Court should recognize and give effect to the Cayman Proceeding and the orders of the Cayman Court. U.S. federal courts generally extend comity to a foreign court's judgments where the foreign court has proper jurisdiction, provides a full and fair process, and enforcement does not contravene U.S. law or public policy. *See Hilton v. Guyot*, 159 U.S. 113, 202–03 (1895). Accordingly, additional relief and assistance under sections 1521 and 1507 are appropriate.

**VI. Recognition of the Cayman Proceeding Would Not be Manifestly Contrary to United States Public Policy.**

67. While a bankruptcy court may decline to grant relief requested in a Chapter 15 case if the action would be "manifestly contrary to the public policy of the United States," 11 U.S.C. § 1506, courts that have addressed this "public policy exception" have noted that the exception is narrow, its application is restricted to the most fundamental policies of the U.S., and a foreign judgment should generally be accorded comity if the foreign jurisdiction's proceedings meet a fundamental standard of fairness. *See, e.g., In re Odebrecht Engenharia e Construção S.A. – EM Recuperação Judicial*, 669 B.R. 457, 466 (Bankr. S.D.N.Y. 2025); *In re Credito Real, S.A.B. de C.V., SOFOM, E.N.R.*, 670 B.R. 150, 171 (Bankr. D. Del. 2025); *see also In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (holding that a U.S. bankruptcy court is not required to make an independent determination about the propriety of the acts of a foreign court, but only whether their procedures meet U.S. standards of fundamental fairness). Recognition of the Cayman Proceeding would further the Bankruptcy Code's goal of centralizing disputes concerning the Debtor in the Cayman Proceeding. *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990). Recognition of the Cayman Proceeding, and the relief requested herein, would not be manifestly contrary to U.S. public policy, and no basis exists to refuse recognition under section 1506.

**NOTICE**

68. Pursuant to Rule 2002(q)(1) of the Federal Rules of Bankruptcy Procedure and Rule 2002-4 of the Local Bankruptcy Rules for the Southern District of New York, notice of this Verified Petition will be provided to (i) the Debtor; (ii) the JOLs; (iii) RBC; (iv) all parties to litigation pending in the United States in which the Debtor is a party and such parties' counsel, and (v) any other entity as the Court may direct (collectively, the "Notice Parties").

## NO PRIOR REQUEST

69. The Foreign Representatives have not previously sought the relief requested herein from this or any other court.

## CONCLUSION

In fulfilment of the requirement of section 1515(b) of the Bankruptcy Code, a certified copy of the Supervision Order is attached hereto as **Exhibit 1**.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Foreign Representatives respectfully request that this Court (a) grant the relief requested in this Verified Petition and enter an order in the form attached hereto as **Exhibit A** and (b) grant such other further relief and additional assistance as this Court may deem just and proper.

Dated: September 14, 2026
New York, New York

By: */s/ Madlyn Gleich Primoff*
Madlyn Gleich Primoff, Esq.
Michael A. Sloman, Esq.
Faron E. Stalker, Esq.
**FRESHFIELDS US LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
E-mail: madlyn.primoff@freshfields.com
michael.sloman@freshfields.com
faron.stalker@freshfields.com

*Attorneys for Fleming Intermediate Holdings LLC (In Official Liquidation) and Charles Thresh and Eleanor Fisher In Their Capacities as Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FLEMING INTERMEDIATE HOLDINGS LLC (IN OFFICIAL LIQUIDATION),<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-12197 (PB) |

**<u>VERIFICATION OF PETITION</u>**

I, Charles Thresh, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1. I am the Head of Financial Advisory of Teneo (Bermuda) Limited and one of the duly authorized Foreign Representatives of the Debtor.

2. I have read the foregoing *Verified Petition for Recognition of Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1515 and 1517 and for Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1507(a), 1520 and 1521*. Where I have personal knowledge of the factual allegations contained therein, I believe that they are true and accurate. I am otherwise informed and believe that all other factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

3. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of September, 2026 in Hamilton, Bermuda.

Charles Thresh
Foreign Representative of Fleming Intermediate Holdings LLC (In Official Liquidation)