**FRESHFIELDS US LLP**
Madlyn Gleich Primoff, Esq.
madlyn.primoff@freshfields.com
Michael A. Sloman, Esq.
michael.sloman@freshfields.com
Faron E. Stalker, Esq.
faron.stalker@freshfields.com
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001

*Attorneys for Fleming Intermediate Holdings LLC (In Official Liquidation)*
*And Charles Thresh and Eleanor Fisher*
*In Their Capacities as Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| FLEMING INTERMEDIATE HOLDINGS LLC (IN OFFICIAL LIQUIDATION), | Chapter 15 |
| | Case No. 26-12197 (PB) |
| Debtor in a Foreign Proceeding. | |

**DECLARATION OF BEN HOBDEN**
**IN SUPPORT OF VERIFIED PETITION FOR RECOGNITION OF**
**FOREIGN MAIN PROCEEDING PURSUANT TO 11 U.S.C. §§ 1515 AND 1517 AND**
**FOR RELATED RELIEF PURSUANT TO 11 U.S.C. §§ 105(a), 1507(a), 1520 AND 1521**

I, Ben Hobden, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

## Introduction

1. I am a partner of the law firm of Harney, Westwood & Riegels (Cayman) LLP ("Harneys"). Harneys represents Charles Thresh of Teneo (Bermuda) Limited and Eleanor Fisher

of Teneo (Cayman) Limited in their capacities as Joint Official Liquidators and authorized foreign representatives (in such capacities, jointly and severally, the "JOLs" or the "Foreign Representatives") of Fleming Intermediate Holdings LLC (In Official Liquidation) ("FIH"). I am the partner at Harneys dealing with this case.

2. I respectfully submit this declaration ("Declaration") in support of the *Verified Petition for Recognition of Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1515 and 1517 and for Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1507(a), 1520 and 1521* (the "Verified Petition"), filed contemporaneously herewith.[1]

3. In preparing this Declaration, I reviewed the (i) Verified Petition; (ii) the relevant provisions of Cayman Islands law; (iii) and the relevant pleadings filed with the Cayman Court (as defined herein) in the Cayman Proceeding (as defined herein). I rely on the Verified Petition, the factual allegations of which have been verified by one of the JOLs, for the factual background relevant to views which I express in this Declaration.

4. I am a partner in the litigation and insolvency practice of Harneys' Cayman Islands office. I was admitted to the Bar in England & Wales in 2008 and practiced as an English solicitor continuously from 2008 to 2012. I was admitted as a Cayman Islands attorney in 2012 and have practiced continuously as such. I therefore have over 18 years' experience practicing law as a qualified attorney, including more than 14 years practicing Cayman Islands law.

5. My practice focuses on insolvency, restructuring and commercial litigation. I have considerable experience advising court-appointed liquidators, banks, multinational corporations and financial services institutions in the liquidation and winding-up of Cayman Islands companies. I have

[1] Capitalised terms used but not otherwise defined herein shall have the meaning given to them in the Verified Petition.

acted for voluntary and official liquidators of numerous Cayman Islands companies and frequently appear as an advocate before the Grand Court of the Cayman Islands ("Cayman Court") in insolvency proceedings.

6. I regularly appear as lead counsel in the Cayman Court and have numerous reported decisions, and I have conducted appeals in the Cayman Islands Court of Appeal. My appearances concern aspects of the Cayman Islands Companies Act (as revised) ("Companies Act"), the Cayman Islands Companies Winding Up Rules (as revised) ("CWR") and other laws governing insolvency of Cayman Islands entities.

7. As a practicing Cayman Islands attorney, I am competent to testify with respect to the Cayman legal matters discussed herein, which are well within my expertise. I have previously provided expert evidence of Cayman Islands insolvency law to the United States Bankruptcy Court for the Southern District of New York, among other courts.

8. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge or based upon my review of relevant documents, including, without limitation, the Verified Petition, or upon my opinion based upon my experience and knowledge. To the extent matters stated in this Declaration are statements of legal opinion, such statements represent my view of the law of the Cayman Islands as a practicing Cayman Islands attorney.

9. For the reasons discussed below, it is my position that: (i) the Cayman Proceeding constitutes a "foreign proceeding" and the JOLs qualify as "foreign representatives" in connection with the Cayman Proceeding according to 11 U.S.C. §§ 101(23) and (24), respectively; and (ii) the Cayman Proceeding is a "foreign main proceeding" within the meaning of the Bankruptcy Code.

## Background

10. FIH was incorporated on 15 February 2022 as a Cayman Islands limited liability company pursuant to the Limited Liability Companies Act (as revised) (the "LLC Act"). FIH is the subject of a liquidation proceeding under the supervision of the Cayman Court ("Cayman Proceeding"), Cause No: FSD 347 OF 2025 (MRHC).

11. FIH acts as an intermediate holding company of various direct and indirect subsidiaries incorporated in Bermuda. It is the parent company of Jaguar Holdings LLC (Joint Voluntary Liquidators appointed) ("Jaguar"). Fleming Reinsurance Holdings LLC ("Fleming Holdings"), also incorporated in the Cayman Islands, is the sole member and sole manager of FIH. FIH is part of a group of companies, which are engaged, through operating subsidiaries, in the business of acting as specialty run-off acquirer and legacy reinsurance liability carrier focused on the North American Property & Casualty industry and assuming reinsurer of reinsurance business ceded to it by various ceding insurance companies.

12. The liquidation of FIH was preceded by: (i) the default by Jaguar of certain terms under a credit agreement between (amongst others) Jaguar as borrower, FIH as guarantor, and Royal Bank of Canada ("RBC") as lender, issuing lender and administrative agent for the lenders (the "Credit Agreement"). Pursuant to the Credit Agreement, FIH was indebted, as guarantor, to RBC in the amount of US$124,622,504.81 as at 16 October 2025; and (ii) a petition presented by FIH on 20 October 2025 seeking the appointment of restructuring officers pursuant to section 91B of the Companies Act.

13. On 3 November 2025 FIH was, by way of special resolution of Fleming Holdings, placed into voluntary liquidation with the JOLs appointed initially as voluntary liquidators.

14. On 27 November 2025 the JOLs filed a petition seeking to bring the voluntary

liquidation of FIH under supervision of the Cayman Court. The relief was granted and on 13 January 2026 the Cayman Court entered an order (the "Supervision Order") bringing the liquidation of FIH under the supervision of the Cayman Court and appointing the JOLs as joint official liquidators of FIH.

15. On 3 March 2026 the JOLs convened a meeting of FIH's creditors with the primary purpose of establishing a liquidation committee. However, a quorum of creditors did not attend the meeting. The meeting was adjourned indefinitely and no liquidation committee was established. On 20 July 2026, the Cayman Court entered an order dispensing with the requirement to establish a liquidation committee.

16. As "official liquidators" appointed by the Cayman Court, the JOLs may exercise such powers as are conferred by the Companies Act and the Supervision Order appointing them (*see* Section 110 of the Companies Act). On 11 September 11 2026, the Cayman Court entered an order (the "Sanction Order") authorizing, among other things, the JOLs to act as FIH's foreign representatives within the meaning of section 101(24) of the Bankruptcy Code and to commence this Chapter 15 case.

**Sources of Law of the Cayman Islands**

17. I have been asked by the JOLs to explain in general terms the relevant substantive Cayman Islands law and procedural rules relating to the Cayman Proceeding and dissolution of insolvent Cayman Islands companies, and in particular how they relate to FIH, for the purpose of filing a petition for recognition of the Cayman Proceeding as a foreign main proceeding under Chapter 15 of the Bankruptcy Code. The issues on which I have been asked to opine fall well within my professional experience.

18. The Cayman Islands is a British Overseas Territory and, as such, its laws are derived from: (a) original local statutes enacted by the local parliament; (b) English common law

brought to the Cayman Islands as developed and applied by the courts of the Cayman Islands; (c) statutes of England and Wales in existence at the time of settlement, as subsequently applied, amended, repealed and replaced by statutes and subsidiary legislation enacted in and applicable to the Cayman Islands; (d) Orders in Council made by prerogative Order of the British Sovereign and made specifically applicable to the Cayman Islands; and (e) statutes of the United Kingdom Parliament that have been expressly extended to apply to the Cayman Islands.

19. Given that the Cayman Islands is a relatively small jurisdiction, the extent of its body of case law is not nearly as voluminous as many other common law jurisdictions. As such, there is often no decided local case governing a particular legal point. In these circumstances, the courts of the Cayman Islands can and do have regard to cases decided in those other jurisdictions, particularly appellate decisions from England and Wales which are generally treated as persuasive or highly persuasive, although they are not strictly binding on the courts of the Cayman Islands.[2] Where no specific local statutory provision applies, the question will often be determined according to common law and the doctrine of judicial precedent applies. The court of first instance is the Cayman Court which is bound to follow the decisions of the Cayman Islands Court of Appeal and the Privy Council on appeals from the Cayman Islands.[3] The Cayman Court will also, as a matter of judicial comity, usually follow its own previous decisions unless they are shown to be wrong.[4]

---

[2] *HQP Corporation Limited (in official liquidation*) [2013 (2) CILR 203] at [70]-[71].

[3] *HQP* at [71].

[4] *Re Bank of Credit & Commerce International,* CILR 56 [1994-95]; *HQP* at [71] (citing a number of earlier Cayman Islands decisions).

20. There is a right of appeal from the Cayman Court to the Cayman Islands Court of Appeal. The final appellate court for the Cayman Islands is the Judicial Committee of the Privy Council ("Privy Council") which sits in London and which is comprised of members of the English Supreme Court (the highest court in England and formerly known as the House of Lords). The Cayman Court is bound by decisions of the Cayman Islands Court of Appeal and by decisions of the Privy Council on appeals originating from the Cayman Islands.

**Liquidation of Cayman Islands Companies**

21. The statutory provisions governing the liquidation of Cayman Islands companies are set out in Part 5 of the Companies Act, which is supplemented by the CWR, the Insolvency Practitioners' Regulations (2026 Revision) ("IPR"), the Foreign Bankruptcy Proceedings (International Cooperation) Rules, 2018 (as revised) and the Grand Court Rules 1995 (as revised).

22. The provisions of Part 5 of the Companies Act apply to companies formed and registered under the Companies Act or its predecessors. Pursuant to section 37(1) of the LLC Act, the provisions of Part 5 of the Companies Act and the CWR apply to the voluntary liquidation of a limited liability company that is brought under the supervision of the Cayman Court, except to the extent such provisions are inconsistent with the LLC Act.

23. A Cayman Islands limited liability company may be wound up: (a) voluntarily, following the passing of a special resolution of its members, pursuant to a mandatory term in its constitutional documents, or (subject to certain limitations) at any time when it has no members;[5]

[5] Sections 35(a) and 36(1) of the LLC Act.

(b) compulsorily, by order of the Cayman Court;[6] or (c) under the supervision of the Cayman Court.[7]

24. In this case, FIH's sole managing member, Fleming Holdings, passed a resolution placing FIH into voluntary liquidation on 3 November 2025. Given that FIH's directors were not able to provide the requisite solvency declaration, the JOLs applied to the Cayman Court to bring the liquidation under the supervision of the Cayman Court. Following the making of the Supervision Order on 13 January 2026, FIH is now in official liquidation and the JOLs are appointed as joint official liquidators of FIH.

**<u>Liquidation by the Cayman Court</u>**

25. The compulsory or supervised liquidation of a Cayman Islands company is carried out by the Cayman Court pursuant to certain statutory mechanisms set out in the Companies Act.[8] A Cayman Islands company may be compulsorily wound up by the Cayman Court where: (a) the company has passed a special resolution requiring the company to be wound up by the Cayman Court, (b) the company has not commenced business within a year from its incorporation, or suspends its business for a whole year, (c) the period, if any, fixed for the duration of the company by the LLC agreement expires, or whenever the event, if any, occurs, upon the occurrence of which it is provided by the LLC agreement with the company is to be wound up, (d) the company is unable to pay its debts, or (e) the court is of the opinion that it is just and equitable that the company be wound up.[9]

---

6 Section 35(b) of the LLC Act.

7 Section 35(c) of the LLC Act.

8 As applied by section 37(1) of the LLC Act.

9 Section 92 of the Companies Act.

26. FIH entered into voluntary liquidation, in short, as a result of a member resolution and its inability to pay its debts as they came due. It entered into official liquidation due to a declaration of solvency not being provided by FIH's sole manager and upon application to the Cayman Court by the JOLs.

27. A general principle underlying the Cayman Islands' insolvency regime is that the claims of investors and creditors within the same class are treated on a *pari passu* basis.[10]

28. Section 97(1) of the Companies Act provides that upon the entry of a winding up order, no suit or other proceeding may be commenced or continued against the company except with leave of the Cayman Court and subject to such terms as the Cayman Court may impose. This automatic stay, similar to the automatic stay provided for in the Bankruptcy Code, serves to promote the JOLs' ability to deal with the claims of creditors collectively and comprehensively.

29. In my experience, Cayman Islands liquidation proceedings are fair and equitable. All creditors and interest holders have an opportunity to be heard by the Cayman Court and no creditor will be prejudiced because it is foreign-based.

**The JOLs**

30. The JOLs are fiduciaries and officers of the Cayman Court.

31. As Joint Official Liquidators of FIH, the JOLs' duties include to: (a) collect, realise and distribute the assets of FIH to its creditors and, if there is a surplus, to the persons entitled to it (such as members); and (b) to report to FIH's creditors and members upon the affairs of FIH and the manner in which it is being wound up.[11]

---

[10] Section 140 of the Companies Act.

[11] Section 110 of the Companies Act.

32. Schedule 3, Part I of the Companies Act sets out the powers that the JOLs may exercise with the sanction of the Cayman Court. They are:

a. Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.

b. Power to carry on the business of the company so far as may be necessary for its beneficial winding up.

c. Power to dispose of any property of the company to a person who is or was related to the company.

d. Power to pay any class of creditors in full.

e. Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.

f. Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

g. Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

h. The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

i. The power to raise or borrow money and grant securities therefor over the property of the company.

j. The power to engage staff (whether or not as employees of the company) to assist him in the performance of his functions.

k. The power to engage attorneys and other professionally qualified persons to assist him in the performance of his functions.

33. Schedule 3, Part II of the Companies Act further provides that the Official Liquidators are permitted to exercise the following powers without the Cayman Court's sanction, although in practice liquidators will often still wish to seek sanction of the Cayman Court for steps taken:

a. The power to take possession of, collect and enter the property of the company and for that purpose to take all such proceedings as he considers necessary.

b. The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

c. The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.

d. The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

e. The power to promote a scheme of arrangement pursuant to section 86.

f. The power to convene meetings of creditors and contributories.

g. The power to do all other things incidental to the exercise of his powers.

34. As set out in the Supervision Order made by the Cayman Court, the JOLs have been authorized to exercise the following powers listed below:

a. To engage staff to assist the JOLs in the performance of their functions;

b. To engage attorneys and other professionally qualified persons in the Cayman Islands to assist the JOLs in the performance of their functions; and

c. To enter into a funding agreement with RBC.

35. Moreover, the JOLs are also generally empowered to investigate: (i) the causes for the failure of FIH, as well as, (ii) generally, the promotion, business, dealings and affairs of FIH.[12]

36. As noted above, the Cayman Court entered the Sanction Order authorizing the JOLs to act as FIH's Foreign Representatives.

## United States Bankruptcy Code

### A. The Liquidation of FIH is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code

37. I am advised by United States Counsel that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code as:

> ... a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

38. Although the application of section 101(23) of the Bankruptcy Code is ultimately a question of applicable United States law on which I am not qualified to opine, based on my reading of the language of the section, I believe that the Cayman Islands liquidation of FIH satisfies the above definition. It is a collective judicial proceeding, in the Cayman Islands, governed by Cayman Islands statute applicable to corporate insolvencies (the Companies Act and LLC Act), in which FIH's assets and affairs are subject to the control and supervision of the Cayman Court, for the purposes of liquidation.

### B. The JOLs are "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code

39. I am also advised by United States Counsel that "foreign representative" is defined in section 101(24) of the Bankruptcy Code as:

---

12 Section 102(1) of the Companies Act.

> ... a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

40. Again, the application of section 101(24) is ultimately a question of applicable United States law on which I am not qualified to opine, but in my view, the JOLs satisfy this definition. First, the Cayman Court has authorized the JOLs to act as FIH's "foreign representatives" within the meaning of section 101(24) pursuant to the Sanction order. Second, I believe that the Foreign Representatives are persons "authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs." The JOLs have been appointed, as fiduciaries and officers of the Cayman Court, by the Cayman Court to investigate and administer the distribution of FIH's assets and affairs in respect of FIH's liquidation and to act as duly authorized representatives of FIH. Under Cayman Islands law, action by either of the JOLs suffices to authorize conduct by FIH. Accordingly, I believe that the Foreign Representatives constitute "foreign representatives" of FIH within the meaning of section 101(24).

**C. Factors relevant to the determination of COMI**

41. I am advised by U.S. Counsel that certain other provisions of Cayman Islands law may be relevant to the determination of the centre of main interests ("COMI") of the foreign debtor under section 1517 of the Bankruptcy Code.

42. FIH was established as a Cayman Islands limited liability company on 15 February 2022. FIH's registered office is c/o Teneo (Cayman) Limited, Ground Floor, Harbour Place, 103 South Church Street, PO Box 10245, George Town, Grand Cayman, KY1-1003, Cayman Islands. Prior to its voluntary liquidation, its registered office was c/o Maples Corporate Services Limited,

PO Box 309, Ugland House, South Church Street, George Town, Grand Cayman, KY1-1104, Cayman Islands.

43. A limited liability company is prohibited from undertaking business in the Cayman Islands, except in furtherance of the business or affairs of the limited liability company carried on outside of the Cayman Islands,[13] unless that limited liability company holds a licence to carry on business in the Cayman Islands under any applicable law. Specifically, the subscriber to any proposed company applying for registration as a limited liability company under the LLC Act must provide a declaration that the limited liability company shall not undertake business with the public in the Cayman Islands other than so far as may be necessary for the carrying on of that limited liability company outside of the Cayman Islands.[14] Subject to compliance with any other applicable licencing or regulatory requirements, in order to further objects outside of the Cayman Islands, a limited liability company may effect and conclude contracts and exercise all of its powers necessary for the carrying on of its business, within the Cayman Islands.[15] In other words, subject to any licencing and regulatory requirements, it can employ staff or agents in the Cayman Islands and maintain an office in the Cayman Islands.

44. As such, although, upon its incorporation as a limited liability company, FIH was restricted from carrying on business within the Cayman Islands, that did not mean that FIH had no presence at all in this jurisdiction. The registered office of FIH has been situated in the Cayman Islands since its inception and continues to be so situated. In addition, FIH's sole member—Fleming Holdings—is likewise incorporated and based in the Cayman Islands.

---

13 Section 9(1) of the LLC Act.

14 Section 5(2) of the LLC Act.

15 Section 9(1) of the LLC Act.

45. In addition, the restriction on carrying on of an exempted company's business within the Cayman Islands, only in support of its business outside the Cayman Islands, does not have any practical effect in the context of the liquidation of that company. Following the appointment of voluntary liquidators, the liquidation of FIH has been conducted within the Cayman Islands. The IPR mandates that at least one official liquidator be resident in the Cayman Islands. In the present case, one of the two JOLs resides in the Cayman Islands. The JOLs' conduct of the liquidation is subject to the supervision of the Cayman Court. Various steps taken by the JOLs have required or would require the express permission of the Cayman Court. Other matters have been reported to the Cayman Court either in Liquidator reports, or in affidavits and letters to the Cayman Court. In practice, this means that the business of FIH is presently being conducted by the JOLs from within the Cayman Islands and all aspects of the winding up of FIH are subject to the supervision of the Cayman Court.

46. Accordingly, it is respectfully submitted that there is a substantial nexus to the Cayman Islands in respect of the operating control over FIH.

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws of the United States of America this 14th day of September, 2026.

Ben Hobden

Ben Hobden